UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| **LEFT FORK MINING CO., et al.,** | **CIVIL ACTION NO. 6:13-08-KKC** |
| Plaintiffs, | |
| V. | **OPINION & ORDER** |
| **IRVIN HOOKER, et al.,** | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the defendants' motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) (DE 12).[1] For the following reasons, the defendants' motion will be granted.

\* \* \*

Left Fork Mining Company operates a coal mine in Bell County, Kentucky under a lease agreement with Manalapan Land Company, Ltd. and Black Star Land and Mining Company, Ltd. Under the agreement, Left Fork pays Manalapan and Black Star royalties for the coal mined on their property. Left Fork then supplies the coal to Cumberland River Energies, LLC, who sells the coal to various third-party purchasers. Bennett Resources, LLC leases mining equipment to Left Fork. Collectively, these companies make up the plaintiffs in this case.

---

[1] On December 9, 2013, three of the plaintiffs filed a suggestion of bankruptcy indicating they are seeking relief under Chapter 7 of the bankruptcy code. (DE 19, 20, and 21). In their filings, the plaintiffs mistakenly assert that the present litigation is subject to the bankruptcy law's automatic stay. The automatic stay applies only to proceeding brought *against* the debtor. 11 U.S.C. § 362(a)(1) (emphasis added). It does not apply to proceedings, such as the present litigation, where the plaintiff has filed for bankruptcy because the judicial proceeding is not being brought against the debtor.

The plaintiff companies bring suit against six employees of the Federal Mine Safety & Health Administration (MSHA) District 7, alleging that the actions of these six employees led to the destruction of their property—including the mine itself and the valuable equipment inside. They assert a violation of their constitutional rights under the Fifth Amendment and various state-law tort claims brought through supplemental jurisdiction.

In considering whether to grant a motion to dismiss, the court must view the allegations in the complaint in the light most favorable to the plaintiff, treating all well-pleaded facts as true. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). According to the complaint, the events leading to the present action began on March 22, 2011. On this date, several MSHA representatives issued Citation No. 8353801 due to an elevated methane reading observed during a routine inspection. This citation permitted Left Fork the opportunity to abate the condition by submitting a remedial plan to MSHA. In addition to the citation, however, the MSHA inspector issued an order pursuant to § 107(a) of the Mine Act. This order declared that an imminent danger existed throughout the mine. It directed an immediate evacuation of all personnel. MSHA representatives also issued Order No. 8353802 pursuant to § 103(k) of the Mine Act, which prohibited all Left Fork representatives from entering or performing any work in the mine due to the methane reading around its seals. The two orders combined to prevent any Left Fork employees from entering the Mine.

Following the issuance of these orders, mine rescue teams entered the mine and re-installed a fallen ventilation curtain, which allowed the methane levels to return to normal. Despite this, the MSHA employees would not permit employees of Left Fork to reenter the mine, instead requiring that they submit a plan to repair a crack found in the strata above

the seal. Left Fork submitted an abatement plan the next day, on March 23. On March 29, 2011, MSHA issued Order No. 8353807-01 pursuant to § 104(b) of the Mine Act due to Left Fork's alleged failure to abate prior Citation No. 8353801. This order (the "Original B" order) claimed that Left Fork failed to submit an abatement plan despite the March 23 proposal. According to the complaint, the plaintiffs attempted to abate the order on numerous occasions but were unable to do so because the defendants refused to grant Left Fork access the mine.

On or about May 17, 2011, Left Fork submitted a plan to abandon the Straight Creek Seam by installing "water seals." (DE 1, ¶ 40–41). This plan was withdrawn in June of 2011 and Left Fork submitted a conventional seal plan—all at the defendants' request. In July, the defendants requested that the plaintiffs withdraw their conventional seal plan and submit a new one, which the plaintiffs did. Over the next few months, this interaction between the plaintiffs and defendants continued: the defendants requested changes to the plan, the plaintiffs complied, and the defendants responded by requesting more changes. The back and forth between the parties culminated in January 2012, when the plaintiffs allege that the defendants finally approved the conventional seal plan but advised them that they had only three days to begin construction. If the plaintiffs did not meet this short timeline, the MSHA employees threatened to shut the mine down.

During this time, Defendant Dannie Lewis issued a modification to the Original B order on January 11, 2012 (the "Modified B Order"). This modification required Left Fork to de-energize the entire mine, which caused the mine to immediately begin flooding as the electric water pumps shut down. In light of the Modified B Order, the plaintiffs began discussing with the defendants ways in which it could restore power and prevent further flooding. These discussions ultimately proved fruitless, and although MSHA eventually

approved a conventional seal plan on January 13, 2012, they refused to allow Left Fork to take action to stop the flooding or retrieve any equipment that could be salvaged.

This eventually led Left Fork to seek relief from the Federal Mine Safety and Health Review Commission, which bears responsibility for reviewing orders and citations issued by MSHA. Left Fork filed a Notice of Contest with the Commission seeking expedited review of the Modified B Order, and the claim was heard on January 30 and 31, 2012. On April 3, 2012, the Administrative Law Judge ruled in the plaintiffs favor, finding that both the Original and Modified B Orders were invalid. Because the ALJ ruled in their favor, no further appeal was necessary.

Despite the favorable ruling by the ALJ, the plaintiffs experienced significant property damage and allege that to this day they are unable to de-water the mine and retrieve their equipment. They now bring this action for damages against six agents of MSHA whom they believe were involved in constitutional violations and state law torts that led to the destruction of their property.

## ANALYSIS

The plaintiffs' complaint can be divided into two parts. First is the constitutional claim that the defendants violated the plaintiffs' Fifth Amendment rights by causing the destruction of their property without due process of law. Second, the plaintiffs bring a series of state tort claims, including trespass, civil conspiracy, abuse of process, intentional interference with contract, and a claim for punitive damages. The Court will analyze these two sets of claims in turn.

### A. Plaintiffs' Constitutional Claim

The Fifth Amendment protects individuals from being "deprived of life, liberty, or property without due process of law." U.S. Const., Amend. V. In their complaint, the

plaintiffs allege that the defendants—who are agents of the United States acting under color of federal law—deprived them of their property without due process by issuing illegal orders to vacate their mine and shut down its power while knowing that the mine would be destroyed by flooding before any review of the orders could be heard. Because there is no federal counterpart to § 1983 of the Civil Rights Act permitting individuals to seek damages against federal officials who violate their constitutional rights, the plaintiffs' claim is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Under *Bivens*, individuals can bring a damages suit against federal employees for violating their constitutional rights in a set of very limited circumstances. The primary thrust of the defendants' motion to dismiss is that the Mine Act's intricate statutory scheme precludes the plaintiffs from relying on *Bivens* in this case.[2]

A *Bivens* remedy is not available simply whenever an individual claims a federal official violated the constitution and caused him damages. Rather, the Supreme Court has narrowed its applicability to only a few set of circumstances, and in most cases the Court has refused to expand the doctrine any further. *See Schweiker v. Chilicky*, 487 U.S. 412, 421–422 (1988) ("Our more recent decisions have responded cautiously to suggestions that *Bivens* remedies be extended into new contexts."); *United States v. Stanley*, 483 U.S. 669, 681 (1987) (refusing to recognize a new *Bivens* remedy); *Bush v. Lucas*, 462 U.S. 367, 368 (1983) (unanimously refusing to recognize a *Bivens* remedy for First Amendment violations "aris[ing] out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States"). *See also Jones v. Tennessee Valley Authority*, 948 F.2d 258, 264 (6th Cir. 1991) (finding no

---

[2] The defendants submit two alternative arguments for dismissal. First, they contend that the plaintiffs' allegations do not amount to a constitutional violation, and second, that the defendants are entitled to qualified immunity. Because the Court finds that the plaintiffs cannot bring suit under *Bivens*, it is unnecessary to address these alternative claims.

*Bivens* remedy available where relief under the Civil Service Reform Act and Energy Reorganization Act was available).

In a recent opinion, the Supreme Court explained that courts are generally guided by a two-step process to determine whether or not a new *Bivens* remedy is necessary. *See Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). First, courts consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* (citing *Bush*, 462 U.S. at 378). Second, if no such remedial scheme exists, "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counseling hesitation before authorizing a new kind of federal litigation." *Id.* (citing *Bush*, 462 U.S. at 378). It is the first of these steps on which the defendants ground their motion.

"The Court has not created additional *Bivens* remedies where the design of a government program suggests that Congress provided what it considered adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." *Jones*, 948 F.2d at 263. In these circumstances, "Congress is in a better position to decide whether or not the public interest would be served by creating a new substantive legal liability." *Id.* at 263 (citing *Bush*, 462 U.S. at 390). Further, courts will not "decide whether or not it would be good policy to permit a [plaintiff] to recover damages" for an alleged constitutional violation because such a determination is more appropriately reserved for Congress. *Bush*, 462 U.S. at 390. For this reason, the Supreme Court has generally refused to recognize a new *Bivens* action where Congress has devised a remedial structure where claimants can pursue relief.

The Mine Act's extensive and comprehensive review process is the kind of remedial structure precluding a judicially-created remedy. Under the Mine Act, mine operators may appeal citations or orders issued under § 814 within thirty days. *See* § 815(a), (d). Such challenges are heard by an administrative law judge, who is appointed by the Federal Mine Safety and Health Review Commissioner. *See* § 823(d); § 823(a). If a party is unsatisfied with the ALJ's ruling it may seek discretionary review from the Commission under 30 U.S.C. § 823(d)(2)(A)(ii)(V), and the Commission may review—on its own initiation—any decision "contrary to law or Commission policy" or in which "a novel question of policy has been presented." 30 U.S.C. § 823(d)(2)(B). Moreover, the Commission has the power to grant both temporary relief and expedited review. *See* § 815(b)(2), (d).

Finally, the Mine Act prescribes specific circumstances under which judicial review of the administrative proceedings is permitted. Under § 816(a)(1), "[a]ny person adversely affected or aggrieved by an order of the Commission issued under this chapter may obtain review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or in the United States Court of Appeals for the District of Columbia Circuit." The court of appeals has "exclusive jurisdiction" and any judgment rendered "shall be final" subject to review by the Supreme Court of the United States. § 816(a)(1). Notably, district courts are granted jurisdiction in only two limited cases: to enjoin habitual operator violations of health and safety standards and to enforce payment of civil penalties. *See* 30 U.S.C. § 818(a); 30 U.S.C. § 820(j). Both of these circumstances involve cases where the federal officials bring suit. "Mine operators enjoy no corresponding right [to sue] but are to complain to the Commission and then to the court of appeals." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 209 (1994).

In *Thunder Basin Coal Co v. Reich*, the Supreme Court considered whether "the Mine Act precludes district court jurisdiction over [ ] pre-enforcement challenge[s]." *Id*, at 207. Although the case did not concern the availability of a *Bivens* remedy, the Court evaluated whether Congress had created a statutory scheme and remedial structure sufficient to allow "meaningful review" of a party's claims. *Id*. The Supreme Court analyzed the review process described above and concluded that the Act "establishes a detailed structure for reviewing violations of 'any mandatory health or safety standard, rule, order, or regulation promulgated under the Act.'" *Id.* (quoting 30 U.S.C. § 814(a)). In fact, the ruling went so far as to examine the legislative history, and the Supreme Court found "persuasive evidence that Congress intended to direct ordinary challenges under the Mine Act to a *single review process.*" *Id.* at 211 (emphasis added) (describing how Congress rejected an amendment to the Mine Act that would have authorized *de novo* district court review of penalty assessments). Significantly, the Court considered whether the statutory remedies in the Mine Act provided meaningful relief to parties claiming constitutional errors and noted that both the Commission and the court of appeals were capable of addressing potential constitutional issues that might arise. *Id.* at 215 (noting that "[t]he Commission has addressed constitutional questions in previous enforcement proceedings" and "constitutional claims [ ] can be meaningfully addressed in the Court of Appeals").

Considering the Supreme Court's approving review of the Mine Act's remedial process by which individuals may seek redress in the face of contested orders or citations along with this Court's own examination of its terms, the Court finds that the Mine Act precludes recognition of a *Bivens* remedy in this case. The Mine Act provides aggrieved parties multiple opportunities for review, including expedited review and temporary relief. It is exactly the kind of statutory scheme where Congress's intent to prescribe the available

remedies for claimants precludes recognition of a new cause of action for damages—even when damages are not among the available statutory remedies. *See Bush*, 462 U.S. at 388; *Jones*, 948 F.2d at 263–64 (explaining that "courts must give appropriate deference to indications that congressional inaction has not been inadvertent and should not create *Bivens* remedies when the design of a government program suggests that Congress has provided what it considers to be adequate remedies for constitutional violations").

The Court is mindful that in this case the Mine Act's remedial structure might have been insufficient to prevent loss to the plaintiff's property or subsequently make them whole. Here, administrative review of the unlawful order did not prevent flooding to the mine, and because the plaintiffs prevailed before the ALJ they had no grounds for appellate review in the court of appeals. Moreover, the Mine Act does not provide a damages remedy to claimants when an MSHA employee's order is subsequently deemed invalid. But none of these facts justify recognition of a new *Bivens* remedy in the face of the Mine Act's statutory structure. The Supreme Court has made it clear that the lack of money damages for constitutional torts is insufficient to give rise to a new *Bivens* remedy when "the existence of statutory mechanisms giv[e] meaningful remedies against the United States, *even though those remedies do not provide 'complete relief' to the claimant.*" *Schweiker*, 487 U.S. at 413 (emphasis added). Congress granted plaintiffs a remedy by allowing administrative review of unlawful orders, which the plaintiffs sought and ultimately prevailed on. The fact that the plaintiffs cannot seek relief in the form of damages is insufficient for this Court to second-guess the remedial scheme devised by Congress by creating a new freestanding claim for damages. *See Jones*, 948 F.2d at 263–64.

Finally, the plaintiffs mistakenly contend that Mine Act cannot preclude a *Bivens* remedy in this case because Left Fork is the only plaintiff who had standing to pursue

administrative relief. The other plaintiffs, all of whom have claimed damage, were not the direct subjects of the invalid orders and thus could not contest them. Under 29 C.F.R. § 2700.4(b)(2), however, non-miner parties are permitted to intervene in administrative challenges to protect their relevant interests. The plaintiffs' claim that they lacked standing is therefore without merit.

For these reasons, the defendants' motion to dismiss the constitutional claims brought pursuant to *Bivens* will be granted.

**B. Plaintiffs State Tort Claims Must Be Dismissed**

The second half of the plaintiffs' complaint arises in the form of several tort actions brought pursuant to this Court's supplemental jurisdiction. The defendants contend that these counts must be dismissed due to the fact that torts against federal officials must be brought pursuant to the Federal Tort Claims Act and must name the United States as the defendant, neither of which have been done here.

The defendants are correct that the plaintiffs' claims fail to satisfy the requirements of the Federal Tort Claims Act and therefore must be dismissed. Federal employees are accorded absolute immunity from common-law tort claims "arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *See* 28 U.S.C. § 2679(b)(1) (stating that the remedy against the United States is exclusive and precludes "[a]ny other civil action or proceeding . . . against the employee"). Rather than bringing suit against the employee, plaintiffs must name the United States as the defendant and a failure to do so deprives the court of subject-matter jurisdiction. *See Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990) ("Failure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction."). The plaintiffs concede that they have not named the United

States as a defendant and have no intention of doing so (DE 15, at 28). Accordingly, the state tort claims brought against the defendants, all of whom are employees of the federal government and sued for acts taken in the course of their employment, must be dismissed.

## CONCLUSION

Accordingly, and for the above-stated reasons, the defendants' motion to dismiss (DE 12) is **GRANTED** and this matter is **DISMISSED**. A judgment shall be issued contemporaneously with this order.

Dated this 17th day of March, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY