RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0308p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

LEFT FORK MINING COMPANY, INC.; BENNETT RESOURCES, LLC; CUMBERLAND RIVER ENERGIES, LLC; BLACKSTAR LAND & MINING COMPANY, LTD.; MANALAPAN LAND COMPANY, LTD.,
    *Plaintiffs-Appellants*,

*v.*

IRVING T. HOOKER, et al.,
    *Defendants-Appellees*.

No. 14-5450

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 6:13-cv-00008—Karen K. Caldwell, Chief District Judge.

Argued: November 18, 2014

Decided and Filed: December 31, 2014

Before: MERRITT, WHITE, and DONALD, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** John M. Williams, RAJKOVICH, WILLIAMS, KILPATRICK & TRUE, PLLC, Lexington, Kentucky, for Appellant. Cheryl D. Morgan, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellees. **ON BRIEF:** John M. Williams, Todd C. Myers, RAJKOVICH, WILLIAMS, KILPATRICK & TRUE, PLLC, Lexington, Kentucky, for Appellant. Cheryl D. Morgan, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellees.

1

No. 14-5450         *Left Fork Mining Co., et al. v. Hooker, et al.*         Page 2

---

# OPINION

---

BERNICE BOUIE DONALD, Circuit Judge. This is an appeal from the district court's dismissal of a claim for money damages brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The district court found that the existence of an alternate remedial scheme created by statute precluded a judicially-created damages remedy in this case. For the reasons stated herein, we **AFFIRM**.

I.

Plaintiffs-Appellants are the owners, operators, and other parties[1] with a financial interest in the Straight Creek underground coal mine in Bell County, Kentucky, and include the Left Fork Mining Company ("Left Fork"), which leases and operates the mine.[2] Straight Creek is an underground slope mine containing two separate seams of coal: the upper seam is the Rim Seam and the lower seam is the Straight Creek Seam. Until its flooding, Left Creek mined in three sections of the Rim Seam, while working to rehabilitate the Straight Creek Seam. Mines like Straight Creek are subject to regular safety inspections pursuant to the Federal Mine Health and Safety Act of 1977 ("Mine Act") (30 U.S.C. § 801 *et. seq.*). The Mine Act authorizes the Secretary of Labor to promulgate mandatory health and safety regulations for all mines (30 C.F.R. § 75.370 *et seq.*). The Federal Mine Safety and Health Administration ("MSHA"), a division of the Department of Labor ("DOL"), acts on behalf of the Secretary of Labor and enforces the Mine Act. The Mine Act generally requires at least four annual inspections and, in some instances, more frequent, "spot," inspections, such as in the event of excessive methane

---

[1]Left Fork operates Straight Creek under a lease agreement with Manalapan Land Company, Ltd. and Black Star Mining Company, Ltd. Under the agreement, Left Fork pays Manalapan and Black Star royalties for the coal mined on their property. Left Fork then supplies the coal to Cumberland River Energies, LLC, which sells the coal to various third-party purchasers. Bennett Resources LLC leases mining equipment to Left Fork. Collectively, these companies make up the appellants in this case.

[2]On November 11, 2013, Left Fork, Bennett Resources, LLC, and Cumberland River Energies, LLC filed for bankruptcy under Chapter 7. Although the pending lawsuit was listed in the respective bankruptcy schedules, none of the parties attempted to substitute the appointed bankruptcy trustees in the pending district court action. On March 17, 2014 the district court dismissed the complaint and the Plaintiffs-Appellants filed a notice of appeal on April 14, 2014. The appointed trustees hold the exclusive right to assert the instant appeal on behalf of Left Fork, Bennett Resources, LLC, and Cumberland River Energies, LLC. Therefore, those parties must file a motion for substitution in accordance with Fed. R. App. P. 43(a) and (b).

liberation. 30 U.S.C. § 813(i). Defendants-Appellees Irvin Hooker,[3] Clayton "Eddie" Sparks, Dannie Lewis, Dennis Cotton, Charles Maggard, and Sam Creasy are mine inspectors or supervisors employed by the MSHA (collectively, "MSHA employees"). The Mine Act mandates that an inspector *must* issue a citation to a mine operator for any conditions the inspector observes that are in violation of the Mine Act or its attendant regulations. 30 U.S.C. § 814(a).

During a routine inspection on March 22, 2011, MSHA inspector Tom Middleton noted elevated methane gas readings from behind a seal meant to confine methane and other dangerous gases and prevent entry to the Straight Creek mine's ventilation system. Given the high likelihood of a significant and substantial safety threat, Middleton issued an order ("Imminent Danger Order") under section 107(a) of the Mine Act, 30 U.S.C. § 817(a) and a citation under section 104(a) of the Mine Act, 30 U.S.C. § 814(a). In the event of an accident, which includes an unplanned inundation of a mine by a gas, section 103(k) of the Mine Act, 30 U.S.C. § 817(a), authorizes MSHA agents to issue orders they deem appropriate to ensure safety of any persons in the mine. Acting pursuant to this authorization, Middleton issued a second order ("No Access Order" or "K Order") proscribing Left Fork's access to the mine. The No Access Order closed the mine for all activity, but was modified by Middleton multiple times that day to allow for ventilation, conducting of required examinations, re-energizing of power, monitoring of the seals, and de-watering of the mine. Middleton also issued a second citation pursuant to section 104(a) of the Mine Act, 30 U.S.C. § 814(a) for maintenance issues related to a crack above mine seals that was allegedly leaking.[4]

Left Fork advised Middleton that the elevated methane readings were likely the result of a faulty ventilation curtain and proposed investigating the situation. But because the No Access

---

[3] The death of Irving Hooker, a public officer sued in his official capacity, during the pendency of this appeal does not necessitate substitution. See Fed. R. App. P. 43(c)(2) ("When a public officer who is a party to an appeal or other proceeding in an official capacity dies, resigns, or otherwise ceases to hold office, the action does not abate. The public officer's successor is automatically substituted as a party. Proceedings following the substitution are to be in the name of the substituted party, but any misnomer that does not affect the substantial rights of the parties may be disregarded. An order of substitution may be entered at any time, but failure to enter an order does not affect the substitution.")

[4] Mine operators may contest orders issued under section 103, 107 (and any modification therein) within 30 days of issuance. 29 C.F.R. § 2700.22. The Administrative Law Judge's decision in this case suggests that Left Fork contested the No Access Order, Imminent Danger Order, and accompanying citations. Those cases were assigned to a different Administrative Law Judge, however, and the record does not indicate the outcomes.

No. 14-5450     *Left Fork Mining Co., et al. v. Hooker, et al.*     Page 4

Order was already in place, Middleton did not permit access to the mine and Left Fork was required to submit an abatement plan to repair the seals.

The next day, Left Fork complied and submitted an abatement plan seeking approval to repair the crack in the strata above the seal. MSHA did not respond in writing to the submitted abatement plan. Instead, a few days later, on March 29, 2011, Middleton issued an order pursuant to section 104(b) of the Mine Act, 30 U.S.C. § 814(b) ("Abatement Order" or "Original B Order") alleging that Left Fork failed to submit a plan to repair affected seals in accordance with the second citation issued on March 22, 2011.[5] Left Fork counters that it could not abate the condition because the MSHA would not allow Left Fork access to the mine. On April 8, 2011, Left Fork submitted a second plan for abatement which was denied in writing on April 11, 2011.

Between May 2011 and January 2012, the No Access Order was modified to remove electrical power and stop all work at the mine. This period was also characterized by a series of back-and-forth negotiations between the parties. Left Fork would submit a plan, the MSHA would request changes, Left Fork would comply, and the MSHA would request more changes. On January 11, 2012, MSHA employee Dannie Lewis inspected the mine and noted numerous hazards. The same day, Lewis modified the Abatement Order ("Modified Abatement Order" or "Modified B Order") to require that Left Fork de-energize all power and withdraw all miners. When the mine was de-energized, underground electric water pumps shut down and the mine began to flood.[6]

On January 17, 2012, Left Fork filed a Notice of Contest before the Federal Mine Safety and Health Review Commission ("Commission") challenging the issuance of the Modified Abatement Order pursuant to section 100.6 of the Mine Act.[7] The Commission, which bears singular responsibility for adjudicating disputes under the Mine Act (such as challenges to orders

---

[5] It is unclear from the record whether Left Fork contested the Abatement Order when it was first issued.

[6] Left Fork states that the MSHA approved Left Fork's plans for abatement on January 13, 2012, but only on the condition that Left Fork would begin construction within three days. Despite approving Left Fork's plan, MSHA employees refused to allow Left Fork to stop the flooding or retrieve any equipment that could be salvaged.

[7] The Mine Act's Procedural Rules provide that an operator may contest a citation or an order issued under section 104 of the Act, 30 U.S.C. 814, or a modification of a citation or an order issued under section 104 of the Act. *See* 29 C.F.R. § 2700.20.

No. 14-5450         *Left Fork Mining Co., et al. v. Hooker, et al.*         Page 5

issued by the MSHA), is an independent adjudicative agency created by Congress to provide impartial review of legal disputes arising under the Mine Act. *See* 30 U.S.C. §§ 823(a) and (d). The Commission's Administrative Law Judges ("ALJs") decide cases at the trial level and the five-member Commission provides appellate review. *Id*. Further appeals of the Commission's decisions are to the appropriate United States court of appeals. 30 U.S.C.A. § 816 (a)(1). The Commission is authorized to grant hearings, including on an expedited basis, and to grant temporary relief as requested by mine operators. *Id*.

Left Fork requested an expedited hearing, which was held on January 30-31, 2012, almost three weeks after the mine began to flood. Notably, Left Fork did not request temporary relief in the interim. On April 3, 2012, an ALJ invalidated the Abatement Order and Modified Abatement Order against Left Fork and held that (1) although the excessive methane levels "did meet the criteria for the application of the safety standard for excessive methane," the MSHA erred in modifying the Abatement Order (which was erroneously issued in the first place), and (2) the MSHA should have either issued a new citation or modified the Imminent Danger Order to achieve the same result of shutting off power and withdrawing miners, concluding "Simply put, the [MSHA] Inspector and his Supervisor chose the wrong method to close down the Straight Creek [] Mine." PageID 30. Neither party appealed from the ALJ's decision.

Despite the ALJ's favorable ruling, Left Fork experienced significant flood damage in the interim.[8] Left Fork filed the instant action against the MSHA employees, seeking "[r]easonable compensation for the denial of [Left Fork's] rights and the unlawful destruction of [Left Fork's] Property and Equipment in an amount to be determined at trial." PageID 18.

In its complaint, Left Fork alleged that the MSHA employees violated Left Fork's Fifth Amendment rights to due process of law when they ordered the de-energizing of Straight Creek mine. Left Fork also claimed that when MSHA employees ordered the de-energizing of Straight Creek mine, they did so maliciously and with the knowledge that the mine would flood and cause Left Fork property damage. Left Fork asserts that the MSHA employees were motivated by the desire to retaliate or punish Left Fork over the dispute regarding how to fix the mine seals.

---

[8] Recognizing that a favorable decision may come too late to prevent flood damage to Left Fork's property, at the conclusion of the hearing, the ALJ urged the parties to "meet and work out a plan to prevent destruction of a mine," and then contact his office. PageID 34. However, no such contact occurred.

No. 14-5450     *Left Fork Mining Co., et al. v. Hooker, et al.*     Page 6

Left Fork also alleged a series of state common-law tort claims, including trespass, intentional interference with contract, abuse of process, and civil conspiracy.

In response, the MSHA employees filed a motion to dismiss indicating, inter alia, that Left Fork's state common-law tort claims should be dismissed on absolute immunity grounds and that the Mine Act's statutory scheme precludes a cause of action under *Bivens*. Alternatively, the MSHA employees argued that Left Fork's allegations did not amount to a constitutional violation and, even if they did, the MSHA employees were entitled to qualified immunity. The district court found that Left Fork did not satisfy the requirements of the Federal Torts Claims Act ("FTCA") for bringing various state common-law tort claims against the MSHA employees and that Left Fork was precluded by the Mine Act from seeking a remedy under *Bivens*. Having found that Left Fork had no cause of action under *Bivens*, the district court declined to address the alternate arguments made by the MSHA employees and dismissed Left Fork's case with prejudice.

On appeal, Left Fork does not challenge the district court's dismissal of the state common-law tort claims. Therefore we consider only the dismissal of Left Fork's constitutional claim pursuant to *Bivens*.

II.

We review de novo the district court's dismissal of a case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Bright v. Gallia Cnty.*, 753 F.3d 639, 648 (6th Cir. 2014); *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). In so doing, we accept all material allegations contained in the complaint as true, and construe them in the light most favorable to the non-moving party. *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013). To the extent that any of the factual assertions are in conflict, we accept the facts as stated by Left Fork in its complaint and consider whether those facts constitute constitutional violations that warrant relief under *Bivens*. To find that Left Fork's complaint survives a motion to dismiss, we must find that it contains some viable legal theory under which the claimants may seek relief. *See Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.")). In other words, even if Left

Fork has a "cause of action, [the] complaint might nevertheless be dismissed under Rule 12 (b)(6) unless it can be determined that judicial relief is available." *Davis v. Passman*, 442 U.S. 228, 244 (1979) (considering whether a judicially-created damages-remedy is an appropriate form of relief).

III.

In *Bivens*, in the absence of a federal statute that provides for damages against a federal employee for allegedly violating the Constitution, the Supreme Court recognized a limited, implied cause of action against federal employees for particularly egregious violations of the Fourth Amendment in an unlawful search and seizure case brought by a private citizen. *See Wheeldin v. Wheeler*, 373 U.S. 647, 649-52 (1963) (citing *Bivens*, 403 U.S. at 390). The Supreme Court awarded a judicially-created damages remedy, finding that Bivens would otherwise be without *any* remedy for an unconstitutional invasion of his rights by federal agents. *Bivens*, 403 U.S. at 390 (emphasis added). Since then, the Supreme Court has extended the *Bivens* rationale to allow direct claims arising under the Fifth Amendment. *See Thomas v. Shipka*, 818 F.2d 496, 500 (6th Cir. 1987).

Under *Bivens*, a plaintiff must initially demonstrate (1) a challenged action attributable to a person acting under color of federal law, and (2) conduct that deprives the party of a constitutionally protected interest. *Schweiker v. Chilicky*, 487 U.S. 412, 418-21 (1988). If those elements are satisfied, the Court then proceeds to a two-step inquiry to ascertain whether a *Bivens* damages remedy should be inferred. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (citing *Bush v. Lucas*, 462 U.S. 367, 378 (1983)). A *Bivens* remedy is available only if (1) there are no "alternative, existing process[es]" for protecting a constitutional interest and, (2) even in the absence of an alternative, there are no "special factors counselling hesitation before authorizing a new kind of federal litigation." *Id*. Left Fork has demonstrated that the challenged action here (the de-energizing of the Straight Creek mine) was attributable to individuals employed by a federal agency (the MSHA) who were acting under color of federal law (the Mine Act). Left Fork has also demonstrated that the de-energizing of the mine resulted in damage to property, ostensibly in violation of the Fifth Amendment, which protects individuals from being "deprived of life, liberty, or property without due process of law." U.S. Const., Amend. V. Accordingly,

Left Fork has met the two threshold considerations for a *Bivens* claim. We therefore proceed to the two-step inquiry outlined in *Wilkie*.

A.

The district court's careful discussion of the Supreme Court's analysis in *Wilkie* is persuasive. Because the motion to dismiss was predicated only on the first step of the *Wilkie* analysis, which is a prerequisite for the second step, the district court appropriately limited its discussion to the first step. The district court properly concluded that the statutory scheme set forth by Congress pursuant to the Mine Act provides an alternative existing process for protecting Left Fork's constitutional interest and therefore precludes Left Fork from invoking a cause of action under *Bivens*.

The Mine Act's extensive and comprehensive review process is precisely the kind of remedial structure that precludes a judicially-created remedy. Although the Supreme Court has not ruled on the applicability of a *Bivens* remedy in Mine Act cases, the Court has held that the Act "establishes a detailed structure for reviewing violations of 'any mandatory health or safety standard, rule, order, or regulation promulgated' under the Act." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (quoting § 30 U.S.C. 814(a)). Under the Mine Act, mine operators may contest citations or orders issued under sections 104 and 107 within thirty days. *See* 30 U.S.C. §§ 815(a), (d). Such challenges are first heard by an ALJ, and may also be heard by the Commission at its discretion. 30 U.S.C. § 823(d)(2). In addition to the procedure for contesting an order, the Mine Act authorizes the Commission to grant temporary relief from any order (including those issued under sections 103(k) and 104) or modification thereof. 30 U.S.C. § 815(b)(2);[9] *see also Performance Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 642 F.3d 234, 239 (D.C. Cir. 2011). The Mine Act also prescribes specific circumstances under which judicial review of the administrative proceedings is permitted. Under section 106(a)(1),

---

[9]"An applicant may file with the Commission a written request that the Commission grant temporary relief from any modification or termination of any order or from any order issued under section 814 of this title together with a detailed statement giving the reasons for granting such relief. The Commission may grant such relief under such conditions as it may prescribe, if— (A) a hearing has been held in which all parties were given an opportunity to be heard; (B) the applicant shows that there is substantial likelihood that the findings of the Commission will be favorable to the applicant; and(C) such relief will not adversely affect the health and safety of miners. No temporary relief shall be granted in the case of a citation issued under subsection (a) or (f) of section 814 of this title. The Commission shall provide a procedure for expedited consideration of applications for temporary relief under this paragraph." 30 U.S.C. § 815(b)(2).

"[a]ny person adversely affected or aggrieved by an order of the Commission issued under this chapter may obtain review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or in the United States Court of Appeals for the District of Columbia Circuit." 30 U.S.C. § 816(a)(1).

Left Fork argues that the Mine Act's remedial structure is insufficient to prevent losses to its property or to subsequently make it whole. Even if Left Fork is correct, it does not mean that an alternative, existing process for protecting its constitutional interest is absent. The opportunity for administrative review under the Mine Act exists precisely so that mine operators and miners can protect their constitutional interests. Indeed, Left Fork utilized this very opportunity in filing a Notice of Contest with the Commission which resulted in the ALJ invalidating the contested orders. After availing itself of this remedy, Left Fork now seeks money damages on account of property loss which occurred during the interim. To the extent that the Mine Act does not permit such relief, Left Fork is correct that there is no "alternative, existing process" for receiving financial compensation. Left Fork is also correct that the ALJ's vacatur of the Abatement Order as issued and modified by the MSHA employees did not prevent the Straight Creek mine from flooding. And while it is true that the Mine Act does not provide a damages remedy when an MSHA employee's order is subsequently deemed invalid, the adequate alternative remedy contemplated by *Bivens* does not necessitate financial compensation either.

As the district court noted, the Supreme Court has made it clear that the lack of money damages for constitutional torts is insufficient to give rise to a new *Bivens* remedy when an alternative remedial scheme exists, and even in the absence of an alternative, "a *Bivens* remedy is a subject of judgment." *Wilkie*, 551 U.S. at 550, *see also Bush*, 462 U.S. at 378. Therefore, the lack of money damages under the Mine Act does not automatically entitle Left Fork to a judicially created remedy under *Bivens*.

B.

Assuming arguendo that Left Fork's complaint survives the first step of the *Bivens* test for relief, we next consider whether there are special factors that counsel hesitation before we authorize a new kind of federal litigation for coal mine operators who are regulated by the Mine

Act. Given that the motion to dismiss Left Fork's complaint was predicated on the failure to satisfy the first step of the *Bivens* test for relief, the district court's inquiry did not extend into an explicit analysis of the second step. However, the court indirectly noted that (1) the congressional intent behind the Mine Act (i.e. to provide comprehensive and non-judicial remedies for aggrieved mine operators), and (2) the existence of statutory mechanisms giving meaningful, if not complete, relief, were both special factors that counseled hesitation in authorizing *Bivens* relief in this case. We agree that special factors counseling hesitation are present in this case.

The first special factor counseling hesitation in this case is that the Mine Act established a comprehensive remedial structure, as explained in detail above. The lack of money damages and judicial review available under the Mine Act should not be presumed to be "inadvertent." *Jones v. Tenn. Valley Auth.*, 948 F.2d 258, 263-64 (6th Cir. 1991). ("[C]ourts must give appropriate deference to indications that congressional inaction has *not been inadvertent* and should not create *Bivens* remedies when the design of a government program *suggests* that Congress has provided what it considers to be adequate remedies for constitutional violations.") (emphasis added). Congressional intent based on the legislative history of the Mine Act also supports this presumption. *Id.* That the plaintiffs cannot seek relief in the form of damages does not compel us to second-guess the remedial scheme devised by Congress by creating a new freestanding claim for damages. *Id.*

Moreover, the Mine Act expressly authorizes direct judicial review in only two provisions: actions enjoining habitual operator violations of health and safety standards and actions to collect payment of civil penalties. 30 U.S.C. §§ 818(a) and 820(j). Both of these provisions empower the Secretary of Labor to seek district court review but do not afford the same right to mine operators. *Thunder Basin*, 510 U.S. at 209 & n.11. Instead, mine operators "are to complain to the Commission and then to the court of appeals." *Id*. Such a limitation implies that Congress intended challenges by mine operators under the Mine Act to be limited to a single review process. Allowing a *Bivens* claim to proceed here would be tantamount to a multi-review process.

Further, the Supreme Court has held that "Such 'special factors' include the existence of statutory mechanisms giving meaningful remedies against the United States, even though those remedies do not provide 'complete relief' to the claimant." *Schweiker*, 487 U.S. at 423. *Schweiker* suggests that "meaningful" should be understood based on Congressional intent and not a plaintiff's perspective alone. In *Schweiker*, employees of the Social Security Administration allegedly violated the plaintiff's due process rights in denying disability claims. However, because the Social Security Act provided a mechanism for redress, including the reinstatement of benefits when denial was erroneous, the Supreme Court found special factors counseling hesitation. *Id*. The Supreme Court was not persuaded by the fact that the Social Security Act did not provide any monetary remedy for a constitutional violation claimed, or for the emotional distress and delay that a denial of benefits might occasion. *Id.* This is because Congress is presumed to have balanced governmental efficacy with individual rights in designing the statute. *Id*. Left Fork argues that the alternate existing remedies in *Schweiker* and *Bush* were more effective in making the plaintiffs whole than Left Fork's remedies under the Mine Act. We cannot consider the efficacy of the remedy without also asking whether Congress intended the existing remedies to be supplemented by judicial action. In this case we think that it did not. Supreme Court jurisprudence holding that "effective" relief is not always "complete" relief, and the Mine Act's clear limitations on judicial remedies, counsel us against recognizing *Bivens* relief in this case.

Left Fork argues on appeal that a remedy *must* be "equally effective" in order to preclude a *Bivens* claim. *Carlson v. Green*, 446 U.S. 14, 18-19 (1980)(granting a federal prisoner a *Bivens* remedy for violations of his constitutional rights even though the allegations could also support a suit against the United States under the FTCA). This argument is unpersuasive. If Congress explicitly declares a statutory scheme to be "equally effective" as a constitutional remedy, the availability of a constitutional remedy is eliminated. However, even if Congress does *not* do so, a constitutional remedy is not automatically available. We must nevertheless consider whether special factors, such as Congressional intent to preclude a judicially-created constitutional remedy, exist. In *Carlson*, the FTCA would have provided relief to the plaintiff but the Supreme Court allowed a *Bivens* claim against federal prison officials for Eighth Amendment violations because Congress had not "explicitly declared" that the FTCA was "to be

a substitute for recovery directly under the Constitution and viewed as equally effective." *Carlson*, 446 U.S. at 18-19.  Indeed, unlike the Mine Act, it is clear that "Congress views FTCA and *Bivens* as parallel, complementary causes of action . . . this provision should be viewed as a *counterpart* to the *Bivens* case and its progeny [*sic* ]."  *Id*. at 20 (citing S.Rep.No.93-588, p. 3 (1973) (legislative history to the 1973 amendment to the FTCA)).  Here, Congress has explicitly limited judicial review through the Mine Act.

In addition to *Carlson*, the Supreme Court has extended *Bivens* relief in only one other case. *See Davis*, 442 U.S. at 244.  Like *Carlson*, *Davis* diverges significantly from the instant case.  *Davis* involved a secretary to a Congressman who claimed that her Fifth Amendment rights were violated when her employment was terminated on the basis of gender. *Davis*, 442 U.S. at 244.  For seeking redress, she claimed that she had no effective means of relief other than under *Bivens*. *Id.*  Despite the existence of a remedy under Title VII, the Supreme Court allowed Davis' discrimination claim because there was no evidence that Congress intended to preclude a judicially created remedy.  *Davis*, 442 U.S. at 236. ("[J]udicial review of congressional employment decisions is constitutionally limited only by the reach of the Speech or Debate Clause of the Constitution," therefore, judicial review was warranted in the case to the extent that the Congressman was not shielded by the Clause.)  Unlike in *Davis*, the Mine Act explicitly circumscribes judicial review in this case.

Special circumstances notwithstanding, Left Fork claims damages under *Bivens* because the alleged constitutional violations by the MSHA employees involved improper motive and illegality. *See e.g.*, *Hartman v. Moore*, 547 U.S. 250 (2006) (holding that individuals do not have the right to be free from retaliatory criminal prosecutions unless they were brought without probable cause).  Citing to the Mine Act's provisions for imposing criminal penalties against mine operators, 30 U.S.C. §820(d), Left Fork likens the MSHA employees' actions to those of federal agents in bringing unlawful criminal prosecutions.  Left Fork's analogy is inconsonant because the MSHA employees' issuance and modification of the Abatement Order, the action which underlies this lawsuit, only served to de-energize the Straight Creek Mine and withdraw miners; no penalties, civil or criminal, were imposed on Left Creek through the challenged

orders. Therefore the element of probable cause that is integral to examining the validity of a criminal prosecution is entirely absent in this case.

Even if a finding of improper motive were to somehow dispense with our consideration of "special circumstances" in this case, Left Fork has done little to show how the MSHA employees' actions stemmed from improper motive, aside from stating that they were. *Top Flight*, 729 F.3d at 630 (holding that the bald assertion of legal conclusions is not enough to constitute a claim for relief.) Moreover, the record contains no evidence of improper motive. Therefore, we find that Left Fork has not sufficiently pled improper motive in its complaint to withstand a motion to dismiss. "[U]nadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient to support an action. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 12(b)(6)).

IV.

Given the Mine Act's comprehensive process for protecting constitutional interests, which expressly incorporates judicial review, we decline to create a judicial remedy in this case. Left Fork is precluded from obtaining relief under *Bivens* and the district court properly dismissed its complaint for failure to state a claim upon which relief can be granted. For the foregoing reasons, we **AFFIRM** the district court's decision.